## Foster Estate

*Maurice A. Bank,* for accountant.

*Herbert W. Salus, Jr.,* Special Assistant Attorney General, and *Albert Bartolomeo,* for Commonwealth.

*Bernard J. Duffy, Jr.,* for claimants.

SHOYER, J., August 5, 1965.—Decedent, Anna F. Foster, died April 29, 1964, intestate, not survived by a spouse or issue, but leaving, as appears from the statement of proposed distribution and the testimony of witnesses, as the persons entitled to her estate under the intestate laws, five first cousins once removed, namely: William A. Gilroy, Jr., Jane G. MacWhinney, Wardner Gilroy, Raymond C. Foster, Jr., and Helen M. Buckley, each of whom is stated to be sui juris.

The statement of proposed distribution notes that a *photographic copy* of an instrument alleged to be a holographic will of decedent was lodged with the register of wills for probate, but probate was rejected because of the invalidity of the instrument. A copy of the copy of the instrument, dated October 18, 1929, is attached. It is stated that decedent's father, Charles P. Foster, and her two aunts, Eliza C. and Mattie A. Smith, who are mentioned as legatees (together with two charities) in the instrument, predeceased decedent.

It appears that decedent was adjudged a weakminded person by decree of the Court of Common Pleas No. 6 of Philadelphia County on October 24, 1938, as of September term 1938, no. 1494, and North Philadelphia Trust Company was appointed guardian of her estate.

It further appears that decedent was a patient at Norristown State Hospital until the time of her death.

Accountant charges itself, inter alia, with the receipt of principal and income from Girard Trust Bank, guardian of the estate of Anna F. Foster, and takes credit in its account, inter alia, for payment of medical expenses and hospital expenses, presumably incident to decedent's last illness.

The auditing judge is assured by counsel that all creditors have been paid and that the account may be treated as a final account.

Counsel for the heirs has agreed that the sum of $65 may be awarded to the Society for the Propagation of the Faith and St. Charles Borromeo Seminary, for masses (N. T. p. 6). These are the two charitable legatees named in the alleged will and the amounts are equivalent to their legacies. An award will be made accordingly.

Counsel for accountant has requested that the auditing judge order distribution directly to the five individuals who were proven at the audit to be the intestate heirs of decedent. Ordinarily, an administrator pendente lite is authorized to make distribution only to the executor named in the duly probated will or else to an administrator d.b.n. Counsel's request requires us to examine the powers of an administrator pendente lite and the authority of this court to direct that distribution be made directly to the heirs.

It should be noted that present accountant is a successor by merger to the Colonial Trust Company which was named as executor in the instrument dated October 18, 1929, which was offered for probate. That instrument also named decedent's father as legatee of her jewelry and household goods, and life tenant of her money, bonds, etc. The remaindermen were her two aunts, Eliza C. and Mattie A. Smith. At the audit it was established that decedent's father predeceased her and that the two aunts named as remaindermen also died before decedent, both without issue.

The powers of an administrator pendente lite are nowhere detailed by statute. The usual circumstances of his appointment, however, dictate that he should act essentially as a conservator of decedent's estate pending the appointment of the proper successor personal representative. Section 310 of The Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.310, merely states: "Whenever the circumstances of the case require, letters of administration . . . pendente lite may be granted to any fit person or persons, after such notice, if any, as the register shall require." The comment appended to this section of the act by the Joint State Government Commission adds, inter alia, "The administrator pendente lite, for example, probably should be a person having no interest in the outcome of the litigation." It is agreed among all the parties appearing before me at the audit that no litigation has been started, and there is no present likelihood of any litigation ever being commenced. What need then for appointment of an administrator d. b. n. except to satisfy a legal technicality?

The auditing judge has examined the record of the incompetency proceedings above referred to and notes that decedent was admitted to the Philadelphia Hospital for Mental Diseases at Byberry, Philadelphia, on September 6, 1938, where she remained until her transfer to the State hospital in Norristown. Her father, Charles P. Foster, appeared as a witness in the incompetency proceedings. From the notes of testimony which are filed of record, it appears that decedent had first been admitted to the Philadelphia General Hospital on June 20, 1938, because of her assaultive behavior. She was then 45 years of age and was diagnosed as having "dementia praecox, paranoia type". Her father testified that his daughter had been keeping house for him and that they got along nicely together until "unfortunately, she was taken with an attack

which I presume may be on account of the age, which is a period in women's lives that sometimes there is a change. . . . When I found that she had a change come over her and she began to be somewhat destructive, I thought that it would be better for her to go to the hospital and see whether she could be benefited, which, of course, I had sent her out there."

The record in the court of common pleas also discloses that decedent's legal status as an incompetent continued until her death and that she was never discharged from institutional custody from the time of her first admission to Philadelphia General Hospital.

Following her death, a full accounting was made by the guardian of the incompetent's estate to the Court of Common Pleas No. 6. This account was duly advertised in accordance with the law. The advertisement was directed to "all parties in interest" and recited the purpose of the accounting as the death of decedent. The notice was published in the Philadelphia Daily News and The Legal Intelligencer on October 7, 1964. The public by the advertisement was notified that in the absence of exceptions the balance in the account would be awarded "to the First Pennsylvania Banking and Trust Company, Administrator pendente lite of the Estate of Anna F. Foster, Deceased."

In Katz's Estate, 49 D. & C. 215, 216, Judge Ladner of this court (later Mr. Justice Ladner of the Pennsylvania Supreme Court) said: "In Ellmaker's Estate, 4 Watts 34 (1835), it was held that an administrator pendente lite is an officer of the court, whose duty is limited to filing an inventory, taking care of the assets, and collecting and paying debts. His authority does not extend to the payment of legacies or making distribution of the estate. Except where the contest is protracted, debts are not ordinarily paid or allowed at his accounting, the better practice being to confine his administration to gathering in and conserving the de-

cedent's estate: Clemens' Estate, 21 Dist. R. 175 (1912); but distribution is never made: Loughran's Estate, 257 Pa. 534 (1917)."

In Partridge-Remick Pa. O. C. Practice, vol. 1, p. 309, §6.08(c), we read: "As a general rule, no creditors are paid by such an administrator, nor is any distribution made by him, except to the executor under the will, where upheld, or a regular administrator appointed by the register, after the filing of an account by the administrator pendente lite and an award by the court."

Despite the general rule prohibiting distribution by an administrator pendente lite to the heirs, exceptions do exist. Thus, in Noble Estate, 71 D. & C. 183, President Judge Klein of this court, when apprised of the fact that decedent's widow for some eight months had been without income from testator's large estate (in excess of $5,000,000), that she was 74 years of age, a semi-invalid, and accustomed to living in a household the cost of maintenance of which ran between $65,000 and $75,000 annually, authorized the administrators pendente lite to pay the widow a sum approximately $10,000 per month out of income accumulated in their hands. The order made by Judge Klein was within the safe limits of the amount to which the widow would undoubtedly become entitled upon termination of the pending litigation, and his order was approved per curiam by our court en banc.

In the case of the Administrators of William Bradford, 1 Browne 87, this court was asked to approve the demand of the regular administrators that the heirs refund to them the distribution which they had already received from the administrators pendente lite. This court said (p. 88). "We think they had no power to make distribution. But the question is, whether, having done it according to law, this Court will compel them to refund to the present administrator, that he

may again pay it over in the same mode, and to the same persons? Suppose an administrator to distribute personal estate, to certain persons, and a will should afterwards appear, giving the same sums, to the same persons. Surely, in this case, no Court would compel the administrator to pay the money to the executor, that he might pay it over to the same persons. When the administrators have acted *bona fide*, they should be protected from vexatious suits, if, in the event, the payments are made to those who have a right to receive. The Orphans' Court, adopting the liberal principles of a Court of Chancery, will not withdraw money from the hands of a person entitled to receive it, in order that it may be immediately paid over again by a rightful authority. It must be understood, however, that the *first* payments were not made with a *fraudulent intention*, which we cannot suppose in the present case, because the auditors have given a sanction to the payments. This principle is consonant to reason and justice: it avoids expense, and a circuitous mode of proceeding, and is perfectly agreeable to the maxim of law—'*quod fieri non debet, factum valet*' ". Accord, Rubicam Estate, 13 Phila. 205. See also note in Fiduciary Review, August 1959.

In Gatto's Estate No. 2, 74 D. & C. 529, Judge Cox of the Orphans' Court of Allegheny County, upon the audit of the first and final account of the administrator pendente lite which was the same corporate fiduciary subsequently appointed administrator after an interval of some seven years, said: "No question of creditors is involved, nor any rights of third parties. . . . We think, therefore, in the interest of time and economy under the circumstances of this case that nothing would be gained or lost by directing that the present account of The First National Bank of McKeesport, administrator *pendente lite*, shall be treated as its first and final account as administrator of the estate of

Julia Gatto, deceased, and so forming our decree as to direct payment of the balance directly to the heirs of Julia Gatto."

Here, as in the above-cited cases, we can see no useful purpose to be served by delaying distribution directly to these five individuals who have satisfactorily established their relationship as the intestate heirs of decedent. The grant of letters of administration pendente lite was thrice advertised in the Philadelphia Daily News and The Legal Intelligencer in May and June of 1964. No creditors appeared at the audit of the account of the guardian except the Commonwealth, the hospital and the funeral director. These claims were turned over to the administrator pendente lite for payment and the same have been paid. No other claims of creditors have been presented and it seems most unlikely that there could be any because of the sheltered life led by this incompetent since 1938. It seems probable that had the intestate heirs been known immediately and had they appeared personally or through counsel when the instrument dated October 18, 1929, was offered to the register for probate, any necessity for pendente lite administration could have been avoided. The heirs and The First Pennsylvania Company for Banking and Trusts could then have agreed upon letters of administration being granted to present accountant. While the validity of the proffered instrument appears highly doubtful, all that could possibly be accomplished by its admission to probate has now been accomplished as a matter of fact and record, viz., executor named therein has administered decedent's estate and the two charitable legatees, which are the only legatees to have survived decedent's death, are receiving the same amounts that they would have received under the proffered writing had the same been admitted to probate. Sufficient time has certainly elapsed to allow the discovery and the production of

any possible testamentary writing that could be accepted for probate, especially since a legal guardian has had possession of all property for 26 years. It appearing that no party in interest can be harmed by the making of distribution directly to these heirs, the auditing judge will make the requested awards. . . .

And now, August 5, 1965, the account is confirmed nisi.